1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                   FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JOE HAND PROMOTIONS, INC.,

11              Plaintiff,                    No. CIV S-09-03155 MCE DAD

12        v.

13   GRAIG JERROLD POLLARD,          FINDINGS & RECOMMENDATIONS
     Individually and d/b/a BOGEY'S
14   LOUNGE

15              Defendant.
     _____/
16

17              This matter came before the court on March 19, 2010, for hearing of plaintiff's

18   motion for default judgment against defendant Graig Jerrold Pollard, individually and doing

19   business as Bogey's Lounge.  (Doc. No. 8).  Thomas P. Riley appeared telephonically on behalf

20   of plaintiff.  No appearance was made by or on behalf of defendant at the hearing.

21              Plaintiff's counsel indicated that following some early contact with defendant

22   Pollard regarding possible settlement, there had been no further contact.  The court's docket

23   reflects that defendant has not filed any motion for relief from the Clerk's Entry of Default on

24   January 6, 2010, nor any opposition to plaintiff's motion for entry of default judgment despite

25   being served with both.  Upon hearing argument, the court took plaintiff's motion under

26   submission and granted plaintiff leave to file a supplemental declaration regarding the request for

1

1   award of attorney fees and costs within one week of the hearing.  On March 24, 2010, plaintiff's

2   counsel filed a declaration addressing those matters.

3          For the reasons set forth below, the undersigned recommends that plaintiff's

4   motion be granted and that default judgment be entered against defendant.

5                           BACKGROUND

6          Plaintiff Joe Hand Promotions, Inc. is an international distributor of sports and

7   entertainment programming.  Defendant Pollard operates a commercial establishment called

8   "Bogey's Lounge" in Stockton, California.  By contract, plaintiff was granted the proprietary

9   rights to distribute via closed-circuit television the "Ultimate Fighting Championship 91: Couture

10   v. Lesnar" event (the "Program") which was telecast nationwide on Saturday, November 15,

11   2008.  Defendant intercepted and exhibited the program in his commercial establishment without

12   authorization to do so.

13          The record reflects that service of process was effected on defendant Pollard on

14   December 12, 2009, by personal service.  (Doc. No. 5.)  After defendant failed to file an answer,

15   plaintiff filed a request for entry of default on January 5, 2010.  (Doc. No. 6.)  The Clerk entered

16   default against the defendants on January 6, 2010.  (Doc. No. 7.)  On February 16, 2010, plaintiff

17   filed its motion for default judgment with a proof of service reflecting service of the motion on

18   defendant.

19                 LEGAL STANDARDS

20          Federal Rule of Civil Procedure 55(b)(2) governs applications to the court for

21   entry of default judgment.  Upon entry of default, the complaint's factual allegations regarding

22   liability are taken as true, while allegations regarding the amount of damages must be proven.

23   Dundee Cement Co. v. Howard Pipe & Concrete Prods., 722 F.2d 1319, 1323 (7th Cir. 1983)

24   (citing Pope v. United States, 323 U.S. 1 (1944); Geddes v. United Fin. Group, 559 F.2d 557 (9th

25   Cir. 1977)); see also DirectTV v. Huynh, 503 F.3d 847, 851 (9th Cir. 2007); TeleVideo Sys., Inc.

26   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Where damages are liquidated, i.e., capable of ascertainment from definite figures contained in documentary evidence or in detailed affidavits, judgment by default may be entered without a damages hearing.  Dundee, 722 F.2d at 1323.  Unliquidated and punitive damages, however, require "proving up" at an evidentiary hearing or through other means.  Dundee, 722 F.2d at 1323-24; see also James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993).

Granting or denying default judgment is within the court's sound discretion. Draper v. Coombs, 792 F.2d 915, 924-25 (9th Cir. 1986); Aldabe v. Aldabe, 616 F.2d. 1089, 1092 (9th Cir. 1980).  The court is free to consider a variety of factors in exercising its discretion. Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).  Among the factors that may be considered by the court are

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

Eitel, 782 F.2d at 1471-72 (citing 6 Moore's Federal Practice ¶ 55-05[2], at 55-24 to 55-26).

## ANALYSIS

I.  Whether Default Judgment Should Be Entered

The factual allegations of plaintiff's complaint, taken as true pursuant to the entry of default against defendant Pollard individually and d/b/a/ Bogey's Lounge, establish the following circumstances:  (1) defendant Pollard is the owner, operator, licensee, permitee, person in charge, or person with control over the commercial establishment doing business as Bogey's Lounge in Stockton, California; (2) by contract, plaintiff was granted the exclusive nationwide commercial distribution rights to distribute via closed-circuit television the "Ultimate Fighting Championship 91: Couture v. Lesnar" event which was telecast nationwide on Saturday, November 15, 2008; (3) pursuant to the contract, plaintiff entered into sublicensing agreements with various commercial entities throughout North America by which it granted those entities

1    limited sublicensing rights to exhibit the Program to their patrons within their establishments; (4)

2    as a commercial distributor of sporting events, plaintiff expended substantial monies marketing,

3    advertising, promoting, administering, and transmitting the program to its customers; (5) with

4    full knowledge that the program was not to be intercepted, received, and exhibited by

5    unauthorized entities, defendant exhibited the program at the time of its transmission and did so

6    willfully and for purposes of commercial or private gain; (6) defendant violated 47 U.S.C. § 553,

7    et seq., which prohibits the unauthorized interception, exhibition, publication, and divulgence of

8    programs; (7) by reason of defendant's violation of § 553, plaintiff has a private right of action;

9    (8) defendant also tortiously obtained possession of plaintiff's program and wrongfully converted

10    it to defendant's own use and benefit; (9) by reason of defendant's tortious conversion, plaintiff

11    is entitled to compensatory and punitive damages; (10) the interception and exhibition of the

12    Program violated California Business & Professions Code § 17200, et seq.; and (11) by reason of

13    defendant's violation of the Business & Professions Code § 17200, et seq., plaintiff is entitled to

14    such remedies as restitution, disgorgement, and attorney's fees. (Doc. No. 1 at 3-8.)[1]

15           In its complaint, plaintiff prays for statutory damages of $60,000 for the willful

16    violation of 47 U.S.C. § 553 as alleged in Count Two and for recovery of all costs and reasonable

17    attorney's fees. (Id. at 5-6.) Plaintiff also seeks compensatory and punitive damages, reasonable

18    attorney fees, and costs of suit for defendant's tortious conversion of the Program as alleged in

19    Count Three. (Id. at 6.) Finally, plaintiff seeks restitution, declaratory relief, injunctive relief,

20    attorney fees, and costs of suit for defendant's violation of the California Business & Professions

21    Code as alleged in Count Four . (Id. at 7-8.)

22

23           [1] At the hearing on the motion counsel for plaintiff noted that because the Program in question was a cable television broadcast and not a satellite television broadcast, only 47 U.S.C. § 553 (Count Two) was implicated. See J & J Sports Productions, Inc. v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at *2 (N.D. Cal. Sept. 29, 2008) ("A signal pirate violates section 553 if he intercepts a cable signal, he violates section 605 if he intercepts a satellite broadcast. But he cannot violate both by a single act of interception.") Accordingly, counsel for plaintiff withdrew the request for entry of default judgment on the cause of action brought pursuant to 47 U.S.C. § 605 (Count One).

1    Plaintiff's complaint and summons were served upon defendant Pollard on
2 December 18, 2009, by personal service. (Doc. No. 5.) The undersigned finds that the defendant
3 was properly served with the complaint and that the Clerk properly entered the default of the
4 defendant on January 6, 2010. (Doc. No. 7.) Defendant Pollard was also served with plaintiff's
5 request for entry of default and application for default judgment by the court. (Doc. Nos. 6 and
6 8.). Despite being served with process and all papers filed in connection with plaintiff's request
7 for entry of default and motion for default judgment, defendant failed to respond to plaintiff's
8 complaint, plaintiff's request for entry of default, or plaintiff's motion for default judgment. Nor
9 did the defendant appear at the hearing on plaintiff's motion.

10    After weighing the <u>Eitel</u> factors, the undersigned finds that the material
11 allegations of the complaint for the most part support plaintiff's claims. Plaintiff will be
12 prejudiced if default judgment is denied because plaintiff has no other recourse for recovery of
13 the damages suffered due to the defendant's failure to pay for the right to exhibit the Program.

14    In light of the entry of default against the defendant, there is no apparent
15 possibility of a dispute concerning the material facts underlying the action. Nor is there any
16 indication that the defendant's default resulted from excusable neglect, as defendant was properly
17 served with plaintiff's pleading as well as with plaintiff's request for entry of default and motion
18 for default judgment. Defendant had ample notice of plaintiff's intent to pursue a default
19 judgment against him.

20    Although public policy generally favors the resolution of a case on its merits, the
21 defendant's failure to make a proper appearance and defend against plaintiff's claims has made a
22 decision on the merits impossible in this case. Because most of the <u>Eitel</u> factors weigh in
23 plaintiff's favor, the undersigned, while recognizing the public policy favoring decisions on the
24 merits, will recommend that default judgment be entered against the defaulted defendant.

25 II. <u>Terms of Judgment to Be Entered</u>

26    After determining that entry of default judgment is warranted, the court must next

5

1    determine the terms of the judgment.  Upon consideration of all of plaintiff's briefing, the

2    undersigned will recommend that damages be awarded but not in the amount requested.

3            By its motion for default judgment, plaintiff seeks a judgment in the total amount

4    of $110,875.  That sum consists of $110,000 for one violation of 47 U.S.C. 553(b)(2) and

5    (c)(2)(c); and $875 for the tort of conversion.  (Doc. No. 1 (Compl.) at 9; Doc. No. 8 (Decl. of

6    Thomas P. Riley) at 2; Doc. 11 (Amended Proposed Order).)  The undersigned is mindful that

7    the defendant was served with plaintiff's motion for default judgment and was placed on notice

8    of the amount sought by plaintiff.  However, granting or denying default judgment is within the

9    court's sound discretion, and one of the factors the court is free to consider in exercising its

10   discretion is the sum of money at stake.  See J & J Sports Productions, Inc. v. Betancourt, No.

11   08cv937 JLS (POR), 2009 WL 3416431, at *3 (S.D. Cal. Oct. 20, 2009).

12           The Cable and Television Consumer Protection Act provides that a plaintiff may

13   elect to seek either actual or statutory damages.  47 U.S.C. § 553(c)(3)(A)(i) and (ii).  Here,

14   plaintiff appears to seek enhanced statutory damages.  Statutory damages for each violation of the

15   Act may be awarded at a minimum of $250 and a maximum of 10,000, as the court considers

16   just.  47 U.S.C. § 553(c)(3)(A)(ii).  A maximum enhanced damages award of up to $50,000 is

17   available only where the court finds the violation to have been committed willfully and for the

18   purposes of commercial advantage or private financial gain.  47 U.S.C. § 553(c)(3)(B).  Plaintiff

19   argues that the amount requested in damages is justified here primarily because of the need to

20   deter broadcast piracy in light of the harm done to plaintiff's business as a result of such

21   activities.[2]  The court finds plaintiff's damages argument to be unpersuasive in light of the record

22   before the court.

23   /////

24   ─────────────

25       [2] Unfortunately, plaintiff's argument regarding the amount of statutory damages that
     should be awarded in this case is focused on the cause of action under 47 U.S.C. § 605, upon
     which it no longer seeks default judgement.  The request for statutory damages in excess of the

26   maximum amount allowed under § 553 appears to be based on this same error.

1    In this case, plaintiff's investigator stated that during the "Ultimate Fighting

2    Championship 91: Couture v. Lesnar" broadcast, he observed forty-seven  patrons inside the

3    establishment.  The investigator reported that there was no cover charge for entry.  There is no

4    evidence before the court of any promotion by defendant that the fight would be shown at the

5    establishment.  There is also no evidence before the court that a special premium on food and

6    drink was being charged at the establishment on the night of the fight.  The investigator stated

7    that the establishment had four 27 inch television sets mounted on its walls and one projection

8    big screen television displaying the event.  Plaintiff has presented no evidence to the court

9    suggesting that the defendant is a repeat broadcast piracy offenders.  Finally, there is also no

10   evidence before the court suggesting that defendant Pollard is no longer operating Bogey's

11   Lounge.

12   In light of this record, which fails to establish a particularly egregious violation of

13   § 553, the court will recommend that judgment be entered against the defaulted defendant and

14   that plaintiff be awarded $5,000 in non-enhanced statutory damages pursuant to 47 U.S.C. §

15   553(c)(3)(A)(ii).  See J & J Sports Productions, Inc. v. Cardoze, NO. C 09-05683 WHA, 2010

16   WL 2757106, at *3-5 (N.D. Cal. July 9, 2010) (awarding statutory damages of $1,000 and $250

17   in enhanced damages for a § 553 violation involving a repeat offender in a default judgment)

18   under similar circumstances to those presented here); J & J Sports Productions, Inc. v.

19   Hernandez, No. 2:09cv3389 GEB KJN, 2010 WL 1980186, at *4 (E.D. Cal. May 17, 2010)

20   (awarding the maximum $10,000 in non-enhanced statutory damages under both § 553 and §

21   605); J & J Sports Productions, Inc. v. Manzano, NO. C 08-01872 RMW, 2008 WL 4542962, at

22   *2 (N.D. Cal. Sept. 29, 2008) (in a default judgment awarding the minimum statutory damages of

23   $250 due to evidence that the defendant no longer operated the establishment and therefore a

24   larger award would have little deterrent effect)

25   In his declaration in support of the motion for default judgment, counsel indicates

26   that plaintiff also seeks the award of $875 in damages for the state law tort of conversion,

7

1  representing the amount defendant would have paid plaintiff to show the Program lawfully

2  according to the rate card for the event.  Plaintiff is entitled to such an award.  <u>See</u> <u>J & J Sports</u>

3  <u>Productions, Inc. v. Ro</u>, No. C 09-02860 WHA, 2010 WL 668065, at *4 (N.D. Cal. Feb. 19,

4  2010); <u>J & J Sports Productions, Inc. v. Montecinos</u>, No. C 09-02604 JSW, 2010 WL 144817, at

5  *7 (N.D. Cal. Jan. 11, 2010); <u>but</u> <u>see</u> <u>J & J Sports Productions, Inc. v. Ferreyra</u>, No. C 08-128

6  LKK KJM, 2008 WL 4104315, at *1 (E.D. Cal. Aug. 28, 2008) ("Inasmuch as plaintiff seeks

7  statutory damages rather than actual damages, plaintiff's request for damages for conversion

8  should be denied.").  Therefore, the court will also will recommend that plaintiff be awarded

9  $875 in damages with respect to the tort of conversion.

10           Finally, plaintiff seeks the award of costs and attorney fees.  In counsel's

11  supplemental declaration filed March 24, 2010 (Doc. No. 10), he seeks an award of attorney's

12  fees in the amount of $2,416.40 (6.041 hours at $400 per hour) and costs in the total amount

13  $1,204.63 ($700 investigator fees, $350 filing fee, $80 service of process charges and $74.63

14  miscellaneous charges).  Except for the investigator fees and miscellaneous costs, the court finds

15  the amounts sought to be adequately documented and will therefore recommend that attorney

16  fees in the amount of $2,416.40 and costs in the amount of $430 be awarded as part of the

17  judgment in this action.

18                                    <u>CONCLUSION</u>

19           For the reasons set forth above, IT IS RECOMMENDED that:

20           1.  Plaintiff's August 21, 2009 motion for default judgment (Doc. No. 8) against

21  defendant Pollard individually and doing business as Bogey's Lounge be granted;

22           2.  Judgment be entered against the defendants in the sum of $8,721.40, consisting

23  of  $5,000 in statutory damages for violating 47 U.S.C. § 553; $875 in damages for the tort of

24  conversion; and $2,846.40 in attorneys fees and costs; and

25           3.  This case be closed.

26  /////

1    These findings and recommendations will be submitted to the United States

2 District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within

3 twenty-one (21) days after these findings and recommendations are filed, any party may file

4 written objections with the court.  A document containing objections should be titled "Objections

5 to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to

6 file objections within the specified time may, under certain circumstances, waive the right to

7 appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

8 DATED: July 21, 2010.

9

10                                                    DALE A. DROZD
                                                     UNITED STATES MAGISTRATE JUDGE
11

12 DAD:
   Ddad1\orders.civil\joehand3155.oah.31910.mdj
13

14

15

16

17

18

19

20

21

22

23

24

25

26